T. C. ASHCROFT *et al. v.* LEO. GOODMAN.
SAME *v.* W. T. McLAIN.

*(Jackson.* April Term, 1918.)

1. **CONSTITUTIONAL LAW.** Officers. Removal from office. Proceedings. ''Vacate.'' ''Vacancy.''

Under ordinance providing that all officers of the city shall attend the regular meetings of the council, that any officer desiring to be temporarily absent shall apply to the mayor for leave, and that any officer who is absent without permission of the mayor shall thereby vacate his office, members of a board of commissioners could not, for temporary absence from the city without written authority of the mayor, be deprived of their offices without trial and opportunity to be heard, in view of constitutional guaranty of due process of law, since the word "vacate" cannot be given its technical meaning, the term "vacancy," as used in legal phaseology, meaning a place unfilled, and, when applied to an office, meaning the state of being destitute of an incumbent or a want of a proper or legally qualified officer to officiate.   (*Post, p.* 628.)

Cases cited and approved:  Oliver v. Jersey City, 63 N. J. Law, 634; State v. Lansing, 46 Neb., 514;  Richardson v. Young, 122 Tenn., 471.

Case cited and distinguished:  Conners v. Knoxville, 136 Tenn., 428.

2. **MUNICIPAL CORPORATIONS.** Review of proceedings of city commissioners.

Common-law *certiorari* was the proper remedy in behalf of members of the board of city commissioners to review proceedings of board to deprive them of office.  (*Post, p.* 630.)

3. **MUNICIPAL CORPORATIONS.** Certiorari. Extent of relief. ''Restitution.''

On *certiorari* to review action of board of city commissioners in depriving members of such board of their offices, a writ of res-

titution to place such members in their respective offices was not a proper remedy, and the court of civil appeals had no authority to grant such relief, the writ of restitution being unenlarged as to scope by Thompson-Shannon Code, section 4867, the writ of restitution at common law being a remedy whose object was to restore to the appellant that of which he had been deprived by the enforcement of the judgment against him during the pendency of the suit (citing Words and Phrases, Restitution). (*Post, p.* 630.)

Cases cited and approved: Haebler v. Myers, 132 N. Y., 363; Specht v. Central R. R. Co., 68 Atl., 785; Hawkins v. Kercheval, 78 Tenn., 535.

Case cited and distinguished: Herrin v. Franklin, 1 Tenn. Ch. App., 95.

4. **CERTIORARI. Informal and technical errors.**

Writs of *certiorari* and *supersedeas* to review, reverse, and stay execution of decree of court of civil appeals ruling that members of city council had been wrongfully deprived of office and directing issuance of writs of restitution will not be granted, although writ of restitution was without authority; practical justice having been attained, and the issuance of writ of *certiorari* to which the *supersedeas* applied for is dependent being within judicial discretion of the court, to be granted only when necessary to prevent substantial wrong, especially where the matters in controversy are of a public nature. (*Post, p.* 632.)

Case cited and distinguished: Ramsey v. Hood, 136 Tenn., 597.

FROM SHELBY

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— H. W. McLaughlin and J. P. Young, Judges.

In *Ashcroft* v. *Goodman*:

H. J. LIVINGSTON, City Attorney, for petitioners.

S. P. WALKER, for LeMaster.

C. M. BRYAN and A. WILLIAMS, for defendant.

In *Ashcroft* v. *McLain*:

H. J. LIVINGSTON, City Attorney, for petitioners,

S. P. WALKER, for Kelley.

C. M. BRYAN and B. E. MOSES, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Application in each of these causes is made by petitioners to the court in session for writs of *certiorari* and *supersedeas* to review, reverse, and stay the execution of decrees of the court of civil appeals, ruling that Goodman and McLain had been illegally deprived of their offices as members of the board of commissioners of the city of Memphis, the governing body of that municipality, and directing that writs of restitution issue to put them in possession of their respective offices.

An effort to deprive these defendants of their offices was made by the other members of the board of commissioners, proceeding under an ordinance quoted below. The circuit court on writs of *certiorari* held the attempt void, and, as stated, the court of civil appeals affirmed the judgments.

The contention of petitioners, the mayor and his fellow commissioners, is that Goodman and McLain were absent from the city without written authority of the mayor, in violation of said ordinance of the city, and that the absences were prejudicial to the interests of the city, and obstructive of the administration of its governmental affairs. It is claimed that it was within the power of the board to declare vacancies on that account and to fill same by electing successors. Successors were elected, and they are petitioners along with the mayor.

We need not determine whether the power to deprive defendants in error of their offices was vested in the quarterly county court of Shelby county, as defendants claim, or in the board of commissioners, as the petitioners assert, since we are of opinion that in either case it was the right of the officers to be tried touching their alleged delinquency on charges preferred, notice, and opportunity to be heard.

If we assume (without deciding) for test purposes that the power was with the board of commissioners, under the following city ordinance, this would be true:

"All officers of the city shall attend the regular meeting of the legislative council; and any officer of the city desiring to be temporarily absent shall apply to the mayor for leave of absence, which may, in the discretion of the mayor, be granted in writing for any time not exceeding thirty days; and any officer being absent without the written permission

of the mayor shall thereby vacate his office, which shall be filled as in case of any other vacancy."

To render this ordinance not impeachable for unreasonableness, it at least would have to be construed to have reference to material or substantial absence; that is such an absence as would amount to official delinquency on the part of the officer complained of. He would have a right to have this inquired into in a proceeding, upon charges preferred, as is set forth in *Conners* v. *Knoxville,* 136 Tenn., 428, 189 S. W., 870, and cases there cited.

The contention of the petitioners that the ordinance above quoted provides for an automatic vacancy, we think, cannot be sustained. Authority is by them cited to the effect that:

"A vacancy in office, for any of the causes enumerated on the statutes, occurs usually at the time of the happening of the event whose occurrence is by the statute the cause of the vacancy, and no judicial determination that a vacancy has occurred is necessary." 29 Cyc., 1401; *Oliver* v. *Jersey City,* 63 N. J. Law, 634, 44 Atl., 709, 48 L. R. A., 412, 76 Am. St. Rep., 228; *State* v. *Lansing,* 46 Neb., 514, 64 N. W., 1104, 35 L. R. A., 124.

In such the vacancy may be filled without judicial determination of the fact. Id.

These authorities concern vacancies due to inability of the officer to further fill the office by reason, for example, of removal from the jurisdiction, and not to vacancies claimed to arise because of a delinquency

on the part of the officer. If the law were otherwise, any alleged act of misfeasance could be made to work a deprivation of office without trial, thus subverting the constitutional guaranty of due process of law.

The word "vacate" in the ordinance cannot be given its technical meaning, and technical vacancies are referred to in the authorities just adverted to. The term "vacancy," as used in legal phraseology, means a place unfilled, and, when applied to an office, it means the state of being destitute of an incumbent, or a want of a proper or legally qualified officer to officiate. *Richardson* v. *Young*, 122 Tenn., 471. 125 S. W., 664.

We hold, therefore, that in order to a proper determination of whether Goodman and McLain had forfeited their offices by reason of delinquent absences from the city of Memphis, they were entitled to a trial on charges duly preferred with opportunity afforded them to make defense. This, it is conceded, was not done; and the efforts to declare their offices vacant were void under the principles announced in the Conners Case; common-law *certiorari* being a proper remedy in their behalf.

We are of opinion, however, that the court of civil appeals did not have authority to support and justify it in issuing writs of restitution directing and requiring the board of commissioners, the petitioners, to restore these officers to the respective offices.

In *Herrin* v. *Franklin*, 1 Tenn. Ch. App., 95, 106, it was said:

"A writ of restitution is one which issues to restore a party to the possession of property of which he had been wrongfully deprived by some previous order of the same court. . . . The chancery court, as has been well settled, has no power to issue a writ of restitution to supersede a writ or order of the circuit court, which has been previously executed."

This should be understood to include in the words "same court" an appellate court passing on the same case on review. And this is true though the review be by such a writ of *certiorari*. The general rule is that on annulling the proceedings of a lower court the reviewing court may in its discretion order restitution of that of which the suitor has been deprived wrongfully by reason of illegal orders in the case.

The "writ of restitution" at common law was a remedy whose object was to restore to the appellant that of which he had been deprived by the enforcement of the judgment against him during the pendency of the suit. The court, having taken away, restores that which it ascertains was wrongfully taken.

"It was not created by statute, but was exercised by the appellate tribunal as incidental to its power to correct errors; and hence the court not only reversed the erroneous judgment, but restored to the aggrieved party that which he had lost in consequence thereof. It was usually a part of the judgment of reversal, which directed 'that the defendant be restored to all things which he has lost on occasion of the judgment aforesaid.'" *Haebler* v. *Myers,* 132 N. Y., 363, 30 N. E., 963, 15 L. R. A., 588, 28 Am. St. Rep., 589.

The authorities relied upon by defendants in error go no further than this in cases where the writ of restitution was the common-law writ, unenlarged as to scope by statute. The mention of the writ in Thompson's Shannon's Code, section 4867, is but a recognition of the power as it was exercised at common law; as to which see 34 Cys., 1678; Words and Phrases, "Restitution," citing *Herrin* v. *Franklin*, supra.

We are cited no decision which holds that on *certiorari* to review the action of such a municipal body a writ of restitution is a proper remedy. In *Specht* v. *Central R. R. Co.*, 68 Atl., 785, in the supreme court of New Jersey (opinion by PITNEY, J.), it appears to be recognized that in procedure by *certiorari* the writ cannot in such a case of its force redress a wrong by way of an affirmative step, a judgment thereunder only operating to nullify what has been wrongfully done by obliterating the record thereof, and to deprive all parties of any justification that may be derived from such record. This we believe to be the proper conception of the scope of power of a judicial tribunal in a revisory proceeding of the character here involved.

In *Hawkins* v. *Kercheval*, 10 Lea (78 Tenn.), 535, it was held that *mandamus* was the proper remedy to restore one to an office or place from which he had been removed by a municipal body.

It does not necessarily follow, however, that we must disturb the *status* as fixed by the court of civil

appeals when it directed the issuance of writs of restitution. We are fully persuaded by what was asserted and admitted in the argument at the bar in respect to the nature of the absences of the displaced officials that the merits of the case are so clearly with Goodman and McLain that we should not exercise a discretion to grant writs of *certiorari* in order to supersede the erroneous order. As was said in *Ramsey* v. *Hood,* 136 Tenn., 597, 600, 191 S. W., 129, 130:

"What has been done was erroneously done, because the chancellor had no legal right to order the issuance of a writ of restitution under the circumstances; but it has been done, and practical justice has been attained, and we shall not disturb the result or interfere with the matter further than to tax the complainants with all the costs."

The issuance of a writ of *certiorari,* to which the *supersedeas* applied for is dependent, is in the judicial discretion of the court, to be granted only when necessary to prevent substantial wrong, especially where the matters in controversy are of a public nature.

"The court will not award the writ, where the errors complained of are merely informal and technical, or where, although there is error in fact, substantial justice has been done, and no appreciable injury has resulted to the complaining party." 11 C. J., 130.

Application therefor denied.

FENTRESS, J., did not participate in the disposition of the petitions.