**Application of Raymond C. HODGE For Certificate of Probable Cause.**

**Misc. No. 809.**

United States Court of Appeals
Ninth Circuit.

Dec. 15, 1958.

Raymond C. Hodge, petitioner, in pro. per.

POPE, Circuit Judge.

Hodge has applied to me for a certificate of probable cause. He wants to appeal from an order of the District Court for the Northern District of California, Northern Division, denying his petition for a writ of habeas corpus. In 1953 he was indicted and charged with first degree murder. He pleaded guilty and was sentenced to life imprisonment. No appeal was taken.

This is the second application of this character which has been made by Hodge. His first was denied on the ground that he had not exhausted his remedies in the state courts. See Application of Hodge, 9 Cir., 248 F.2d 843. Following that he filed a new petition for writ of habeas corpus in the Supreme Court of California on November 13, 1957. His petition there, designated No. 6171, was denied on November 26, 1957. His petition to the Supreme Court of the United States for writ of certiorari was denied, Hodge v. People of State of Cal., 356 U.S. 942, 78 S.Ct. 789, 2 L.Ed.2d 818. Thereafter he again petitioned for a writ of habeas corpus in the federal court. An order to show cause was issued and the respondent Heinze, Warden of the State Penitentiary at Folsom, filed a return to the order to show cause and a motion to dismiss. Following argument before the court, the petitioner's application was dismissed and the district court denied a certificate of probable cause.

The petition for the writ of habeas corpus in the district court was substantially identical with the application to the Supreme Court of California. It alleges that petitioner and one Hall were arrested in the State of Oregon charged with a murder in Marin County, California; that they were returned to California and there committed to San Quentin Prison and confined there upon request of the Marin County sheriff pursuant to § 4007 of California Penal Code; that he was there confined in a "punishment cell" in an isolation ward and treated as if he had been already condemned, and while there was forced to witness a condemned prisoner being lead to execution. He complains of the diminutive size of his cell, the limitation upon his opportunity to exercise; his being required to strip for physical inspection and denial of access to the prison library.

I cannot find that these allegations as to the circumstances of petitioner's preconviction confinement presents any federal question. § 4007, mentioned above, provides that a sheriff may remove a prisoner for safekeeping to the California State Prison "When there is any rea-

sonable grounds to believe that a prisoner may be forcibly removed from a county jail." A federal court is not equipped to try the question of compliance with that statute.

■ The briefs which petitioner presented with his application show that he claimed that this confinement amounted to "an imposition of involuntary servitude" forbidden by the Thirteenth Amendment. For this reason he says that § 4007 is unconstitutional. Of course the claim that an indicted prisoner being held for trial cannot be confined in such prison as the state directs lacks substance. It is not the function of habeas corpus to correct cruelties and indignities imposed by guards upon prison inmates. See Williams v. Steele, 8 Cir., 194 F.2d 917.

It is next alleged that the attorneys who were appointed by the court to defend petitioner in the state courts made demands on petitioner that he plead guilty and that they threatened to quit his case if he would not do so. These attorneys represented him at the preliminary hearing before he was held to answer. He alleges that he begged these attorneys to make an investigation of their own; that they refused to do so, avowing their belief in the materiality and legality of the state's evidence against him. He further states that on November 2, 1953, at a conference attended by the District Attorney and by petitioner and his attorneys, he avowed his innocence but stated he agreed to plead guilty for the sole purpose of saving his life; "That he was indeed innocent of the crime if the truth were known but that the truth would be of no usefulness to the petitioner if in the meantime he were executed." He continues that in addition to the pressure of his court appointed attorneys, a factor that induced him to plead guilty was the knowledge that the prosecution was prejudicing defense witnesses by telling them false tales about having eye witnesses as to the homicide; that he then knew that his only chance of escape from punishment by death was to accede to the demands made on him to accept the proposal that he plead guilty in exchange for a life sentence.

■ All these allegations add up primarily to the proposition that petitioner was induced to plead guilty by the urging and other actions of his lawyers. In the brief which he presented to the court below petitioner asserted that this was a case in which he was denied the effective aid and assistance of counsel. However, the facts alleged fall short of presenting a case disclosing denial of a right under the federal Constitution. Because of the seriousness of the offense, petitioner was entitled to have representation of counsel under the rule of Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. This requirement stems from the due process provisions of the Fourteenth Amendment which is directed to the States. Even in cases involving the right to counsel in the federal courts under the Sixth Amendment it is often held in proceedings under Title 28 § 2255 that a mere allegation of mistakes and errors on the part of counsel will not disclose a denial of proper representation. The statement in that connection most commonly made is "Nor will allegations of incompetence or inefficiency on the part of his counsel ordinarily suffice, unless counsel's purported representation 'was such as to make the trial a farce and a mockery of justice.'" Taylor v. United States, 9 Cir., 238 F.2d 409, 413, and cases cited.

Here petitioner, a state prisoner, cannot make a case for a federal court without disclosing that the conduct charged to his attorneys was something for which the State of California was responsible. He would have to demonstrate that there has been a breach of the Fourteenth Amendment's provision: "Nor shall any *State* deprive any person of life, liberty or property without due process of law." (Emphasis mine.) Nothing in the petition would tend to show that the State of California, either in the person of the judge who accepted his plea of guilty, or otherwise, knew of or was responsible

for the alleged improper conduct of his attorneys.[1]

■ Petitioner also complains that neither the prosecution nor the defense attorneys apprised the trial court of the fact that when he agreed to plead guilty, he had nevertheless "avowed his innocence". So far as this is a charge against the defense attorneys, it states no ground for relief, for the reasons just stated. I am unable to perceive any denial of due process in the failure of a prosecuting attorney to apprise the court that a defendant who is pleading guilty had previously avowed his innocence. It would be difficult to find a case in which a defendant who pleaded guilty had not at some stage of the prosecution asserted his innocence. I know of no rule that would require the prosecutor to make a statement of that character, particularly where, as here, the court before accepting the guilty plea, addressed appropriate inquiries to the accused himself, and where the accused was himself represented by counsel whose ability and faithfulness to their appointment the court or the prosecutor had no reason to question.

■ The petition also contains an allegation as to certain perjured testimony alleged to have been given by Hall, who was the alleged accomplice of petitioner in the perpetration of the homicide. The allegations relating to the perjury are set forth in the margin in their entirety.[2]

Several things must be said about this allegation: in the first place, it seems hardly relevant here where the petitioner was found guilty not upon testimony, perjured or otherwise, but upon his own plea of guilty. In the second place, I have examined the petition presented to the Supreme Court of California and it contains precisely the same allegations as those set forth in the footnote. There is no distinct allegation that at either the preliminary hearing or on the morning of November 2, 1953, the prosecution had knowingly used perjured testimony. All that appears is that on that forenoon Hall said that some of the things he had testified to at the preliminary hearing were not true and "deliberately perjured." It is plain to me that such an allegation is insufficient to raise in the

1. So far as the petition is concerned, it charges the lawyers with responsibility for petitioner's entry of the guilty plea. In his legal brief, filed in the district court, petitioner suggests that his guilty plea was the result of his sufferings in the penitentiary. The allegations of the petition do not support any such contention. It is doubtful if the allegations with respect to the attitude of the attorneys disclose any improper conduct on their part; they are fully consistent with the possibility that in view of what these attorneys heard at the preliminary hearing, they used sound judgment in advising a plea of guilty under circumstances which gave promise of life imprisonment rather than a death penalty for petitioner.

2. "At 10:00 A.M., on November 2, 1953, the alleged accomplice, Duane A. Hall, appeared before the trial court and testified therein that he had deliberately perjured a portion of his testimony while testifying against petitioner in the preliminary hearing on August 27, 1953.

"At 2:00 P.M. on November 2, 1953, petitioner appeared before the trial court and entered a plea of guilty, at which time the prosecution offered in evidence, and the court appointed defense attorneys stipulated thereto, the August 27, 1953, transcript of the Preliminary Hearing wherein the alleged accomplice-witness on the morning of November 2, 1953, testified he had perjured a portion of the testimony therein; said perjured testimony of the alleged accomplice-witness being the only inculpating testimony and evidence adduced against petitioner in either the Municipal or the Superior Court. Petitioner was not present in the Superior Court on the morning of November 2, 1953, when the alleged accomplice-witness Hall so testified of his perjury, and had no knowledge of such testimony until April of 1955 when he managed to purchase a copy of the proceedings had on November 2, 1953, at 10:00 A.M., in the case of People v. Hall, #230, in the Superior Court of the County of Marin, wherein the alleged accomplice-witness admitted perjury against petitioner on material matters on August 27, 1953, in the case of People v. Hodge, this petitioner."

California court any question respecting the state's use of perjured testimony.

██ In order to use and exhaust his remedy in the state court, the petitioner must follow state procedural rules. "A failure to use a state's available remedy, in the absence of some interference or incapacity, * * * bars federal habeas corpus." Brown v. Allen, 344 U.S. 443, 487, 73 S.Ct. 397, 422, 97 L.Ed. 469.

██ California provides an adequate post-conviction remedy, Ex parte James, 38 Cal.2d 302, 240 P.2d 596, but it requires applicant for relief of that character to comply with certain procedural requirements. "It is the practice of this court to require, substantially, that one who seeks to show that his conviction was obtained by the prosecution's knowing use of perjured testimony quote or otherwise designate specifically the precise testimony which it is asserted was perjured, state in detail what the actual facts are, and name or otherwise identify the person connected with the prosecution who knew it was perjured and persisted in using it, stating also the circumstances establishing such person's knowledge of the facts. * * * This procedural requirement does not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; it simply demands of him a measure of frankness in disclosing his factual situation." Ex parte Swain, 34 Cal.2d 300, 209 P.2d 793, 794, 796.

The allegations of the petition in the California Supreme Court failed to meet this procedural requirement.[3] They fell far short of making a case of knowing use of perjured testimony by the prosecutor.

The final question I consider is the effect of the allegation set forth in footnote 2, supra, that petitioner was not present in the Superior Court on the morning of November 2, 1953, when Hall gave his testimony, and whether the taking of that testimony in the absence of petitioner would be a denial to him of due process.

██ If petitioner's conviction was based upon testimony taken in his absence, I am willing to assume that such a procedure would be a denial of due process. Cf. Chessman v. Teets, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253. But the judgment of guilty was not based upon that or any other testimony. Just why that testimony was given or taken in that manner, if it was, is not apparent from this petition. The only use that could have been made of it would be to supply the court with information upon which it might base its choice of a sentence. However, a sentencing judge may exercise "a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." Williams v. People of State of New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337. Doing that is not a denial of due process. If, as stated in that case, out-of-court affidavits are properly used for this purpose, I cannot perceive any denial of due process in the judge here receiving that testimony. If such testimony could have been taken following the guilty plea, there would be no substantial difference in the court taking the same testimony in advance of the plea.

██ In his response to the Warden's return, Hodge admitted the three prior felony convictions with which he had

3. A brief filed by petitioner in support of his application for a writ of habeas corpus shows that he is confused on this matter. He says that Hall testified at the preliminary hearing that at the time of the homicide he, Hall, was not afraid of Hodge. He says that later, at the time he was called before the Superior

Court, prior to the imposition of the sentence upon Hodge, Hall said that Hodge threatened him with his gun just before the murder was committed. He stated then he had willfully suppressed this fact when he testified at the preliminary hearing.

been charged along with the charge of the crime of murder. Under § 644(b) of the California Penal Code the sentence of imprisonment for life which he got was the lightest sentence which the court could impose. The taking of that testimony could not have prejudiced petitioner.

The certificate of probable cause is denied.