JAMES EARL RAY

*v.*

STATE OF TENNESSEE.

451 S.W. 2d 854.

(*Jackson,* April Term, 1969.)

Opinion filed January 9, 1970.

Petition for Rehearing Denied February 16, 1970.

Richard J. Ryan, Memphis, J. B. Stoner, Savannah, Ga., Robert W. Hill, Jr., Chattanooga, for petitioner.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, for respondent.

MEMORANDUM DENYING PETITION FOR CERTIORARI

MR. SPECIAL JUSTICE ERBY L. JENKINS delivered the opinion of the Court.

The petitioner, James Earl Ray, who will hereafter be referred to as defendant, was indicted in the Criminal Court of Shelby County, Tennessee, for the murder from ambush of Dr. Martin Luther King.

Murder in the first degree in Tennessee is described as follows:

*Murder in the first degree*—Every murder perpetrated by means of poison, lying in wait, or by any other kind of willful, deliberate, malicious, and premeditated killing, or committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, or larceny, is murder in the first degree. T.C.A. 39-2402.

The punishment for murder in the first degree in Tennessee is set out as follows:

*Punishment for murder in the first degree*—Every person convicted of murder in the first degree, or as accessory before the fact to such crime, shall suffer death by electrocution, or be imprisoned for life or over twenty (20) years, as the jury may determine. T.C.A. 39-2405.

The defendant was represented by privately retained able counsel, and entered a plea of guilty to murder in the first degree, which plea was accepted by the trial judge, the late Honorable Preston W. Battle, and the defendant was sentenced to ninety-nine years to be served in the State Penitentiary.

After this, the defendant, by letter, sought to have the sentence set aside and wrote the trial judge that he had fired his attorney and desired to re-open the case.

The trial court refused to grant the defendant any relief, and a petition for certiorari was filed in the Court of Criminal Appeals, which court heard the matter and refused to grant the petition.

The defendant has filed a petition for writ of certiorari to this Court and has, in effect, two assignments of error, (1) that certain letters written by him to the late Judge Preston W. Battle constituted a motion for a new trial, and (2) that the trial court erred in ruling that the defendant knowingly, intelligently and voluntarily entered a plea of guilty, thus waiving any right he might have had to an appeal.

The defendant upon the advice of his well-qualified and nationally known counsel pleaded guilty to murder in the first degree, the offense with which he was charged, a cold blooded murder without an explained motive.

Consequently, his right to appeal was waived, because it is well settled in Tennessee that when a defendant pleads guilty and fully understands what he is doing, as we believe this defendant did, there can be no legal ground to justify the granting of a new trial. Otherwise, the doors of our state prisons would remain ever ajar to those who are incarcerated therein on pleas of guilty, and who becoming dissatisfied, seek relief on motions of new trial. The dockets of our courts would become congested with such procedure, and these cases would never be closed. There must be a conclusion to litigation sometime, even in a criminal case, in spite of the liberal interpretations of the law by some of our courts. To allow such

procedure would be permitting those defendants to toy with the courts.

In *State ex rel. Richmond v. Henderson,* (1968) 222 Tenn. 597, 439 S.W.2d 263, 264, it was said by this Court:

"This rule has been applied to any number of situations arising in a criminal case, including that situation involving the advice or urging of defense counsel for the defendant to enter a plea of guilty. In cases in which this exercise of judgment by counsel (that of urging a defendant to enter a plea of guilty) has been attacked, it has uniformly been held that this is not a ground for invalidating the judgment. *Davis v. Bomar,* 344 F.2d 84 (6th Cir.), cert. denied, 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965) ; *Application of Hodge,* 262 F.2d 778 (9th Cir. 1958) ; *Shepherd v. Hunter,* 163 F.2d 872 (10th Cir. 1947) ; *Crum v. Hunter,* 151 F.2d 359 (10th Cir. 1945), cert. denied, 328 U.S. 850, 66 S.Ct. 1117, 90 L.Ed. 1623; *Diggs v. Welch,* 80 U.S. App. D.C. 5, 148 F.2d 667, cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002."

The Supreme Court, speaking further in *McInturff v. State,* 207 Tenn. 102, 106, 338 S.W.2d 561, 563, said:

"Now, we think it is axiomatic that the defendant, having confessed judgment for the fine and costs, had no right of appeal, nor did the court have the power to grant such an appeal, because no one can appeal either in a criminal or a civil case from a verdict on a plea of guilty or a judgment based upon confession of liability."

The defendant, in his motion for a new trial, if considered in its most favorable light could be construed as such, alleges that he was misled into entering a guilty

plea, and in his petition for certiorari he alleged that he did not knowingly and voluntarily waive his right to appeal. The substance of the above allegations is that the defendant was deprived of his constitutional right (Sixth Amendment) to have the assistance of counsel. However, there is not one fact in petitioner's brief to support the above allegations.

In *Hudspeth v. McDonald* (10 Cir. 1941), 120 F.2d 962, 968, the court said:

"There is a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel. It is the denial of the right to have such assistance that gives the right to challenge a judgment of conviction by writ of habeas corpus. It is held without exception that the right to have counsel may be waived and that it is only when it is not waived that the validity of the proceedings may be challenged * * *."

In the trial court the petitioner was represented by competent counsel. He entered a plea of guilty on the advice of his counsel, and there is no doubt that his counsel explained to him that the penalty for murder in the first degree in Tennessee carried the death penalty, and that such plea was made with an eager ear, a willing mind and willing heart.

■ The defendant, after due and thoughtful consideration and after being properly advised, entered a plea of guilty to murder in the first degree, and thus took the known offered sentence of ninety-nine years, rather than taking the calculated risk of receiving a more severe penalty at the hands of a jury. He now seeks to back out of this trade with the State and asks for a new trial.

There is nothing from which it can be inferred that the defendant was misled, or that his guilty plea was made involuntarily without knowing the consequences thereof, thus the defendant is precluded from any appellate relief.

We are not deciding on the defendant's guilt or innocence. He and his retained counsel made that decision themselves, with the approval of a jury and the trial judge. We are simply deciding whether or not, after he entered a plea of guilty and received a sentence of ninety-nine years, he can thereafter have a change of heart and make a motion for a new trial. We think not.

Experience teaches us that submissions in criminal cases are brought about by reason of the fact that the defendant and his lawyer realize that in pleading guilty and receiving a lesser sentence, the defendant thereby avoids the chance of a jury imposing a greater sentence.

In Tennessee, a reasonable person does not shoot and kill an unarmed, unsuspecting and innocent victim without just punishment and retribution under our law. The defendant, by his own voluntary and uncoerced action received such, or what he thought was then just punishment, and will now not be heard to complain.

This well planned and well executed killing would indicate the defendant to be of at least or over-average intelligence, and certainly of such intelligence as to understand what he was doing when he went to the "bargaining table," to decide his fate,—whether to plead as he did or take his chances at the hands of a jury. He made the bargain. There is no claim that the State or the court below coerced or influenced him in any manner to make this decision. It was his and his alone, with the aid of the advice of his chosen private counsel. Whether or not they made a mistake in judgment is not for us to say.

In Tennessee, as in all other liberty loving civilized countries, ambush killers are not looked upon with much favor, to say the least. In a country where you do not shoot a sitting duck or a fowl unless in flight; where a rabbit or other game of the field is allowed its chance to run; and where one does not shoot down his fellowman unless that man has committed an overt act that would justify the defendant in so doing, jurors are inclined to deal harshly with such defendants. The defendant and his attorney, with his years of experience, knew this, and in the light of this knowledge of human nature to react violently against those who have committed unprovoked violence, they made the decision to plead guilty and such plea, in the opinion of the Court, should stand.

The next question for consideration is whether the proceedings, at the time the defendant entered his guilty plea, were such a ''farce'' or ''sham'' that it can be said that the defendant was denied due process.

■■ The concept of due process of law as contained in the Fourteenth Amendment is concerned solely with whether or not the State played any part in the wrong done the accused. *United States ex rel. Wilkins v. Banmiller* (D.C.1962), 205 F.Supp. 123.

''And so where, * * * a defendant in a criminal case has retained counsel of his own choice to represent him it is settled by an overwhelming weight of authority that the commission by his counsel of what may retrospectively appear to be errors of judgment in the conduct of the defense (such as urging the defendant to plead guilty) does not constitute a denial of due process chargeable to the state.'' *Davis v. Bomar* (6 Cir 1965), 344 F.2d 84, 87.

"Intervention by this (federal) court requires that the denial of relator's rights be the doing of the state. There is no indication here that the state participated in any such denial * * *." *United States ex rel. Wilkins v. Banmiller*, supra, 205 F.Supp. at 128.

█ In determining whether or not the writ should be granted, it should be kept in mind that it has become well-established law in this State that the writ of certiorari is not granted as a matter of right but it is a matter that addresses itself to the discretion of the Court. *State ex rel. Karr v. Taxing District of Shelby County*, 84 Tenn. 240; *Ashcroft v. Goodman*, 139 Tenn. 625, 202 S.W. 939; *Gaylor v. Miller*, 166 Tenn. 45, 59 S.W.2d 502; *Biggs v. Memphis Loan and Thrift Co., Inc.*, 215 Tenn. 294, 385 S.W.2d 118; and *Boyce v. Williams*, 215 Tenn. 704, 389 S.W.2d 272.

The Court finds that the defendant willingly, knowingly and intelligently and with the advice of competent counsel entered a plea of guilty to murder in the first degree by lying in wait, and this Court cannot sit idly by while deepening disorder, disrespect for constituted authority, and mounting violence and murder stalk the land and let waiting justice sleep.

Therefore, the petition for certiorari is denied.

DYER, CHIEF JUSTICE, and CRESON and HUMPHREYS, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.

## On Petition to Rehear

Mr. Special Justice Erby L. Jenkins:

Since the filing of the Court's original memorandum opinion in this case, the defendant, through his attorney, has filed a petition to rehear.

We have examined the petition carefully and find there is nothing in the petition that was not heretofore considered by the Court, and thus, finding no merit in the petition to rehear, the same is denied.

Dyer, Chief Justice, and Creson and Humphreys, Justices, concur.

McCanless, Justice, not participating.