IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 16, 2025

**STATE OF TENNESSEE v. AIMEE LEE HIGBY**

**Appeal from the Circuit Court for Lincoln County**
**No. 23-CR-62     Forest A. Durard, Jr., Judge**

_____

**No. M2025-00112-CCA-R3-CD**
_____

In 2023, the Defendant, Aimee Lee Higby, entered a guilty plea to the facilitation of first degree felony murder, aggravated child abuse, and abuse of a corpse. By agreement, the trial court imposed an effective sentence of twenty-seven years. Thereafter, the Defendant filed a motion to withdraw her plea, which the trial court denied after a hearing. On appeal, the Defendant contends that the trial court erred when it denied her motion to withdraw her guilty plea. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and KYLE A. HIXSON, JJ., joined.

John H. Richardson, Jr., Fayetteville, Tennessee, for the appellant, Aimee Lee Higby.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber L. Sandoval, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Background**

This case arises from the death of the infant victim, who was the Defendant's grandchild, in the Defendant's residence that she shared with her daughter, who was the victim's mother. The victim was born at home. The Defendant and the victim's mother both used fentanyl while handling the newborn victim, who died approximately fifteen to eighteen hours after his birth. The Defendant, the victim's mother, and another individual,

who was also a co-defendant, hid the infant's body in a closet in the home. The deceased newborn victim was discovered forty-five days later. For these offenses, the Defendant was indicted for: first degree premeditated murder, two counts of first degree felony murder, aggravated child abuse, aggravated child neglect, evidence tampering, abuse of a corpse, simple possession of fentanyl, simple possession of methamphetamine, and possession of drug paraphernalia.

At the December 5, 2023, plea submission hearing, the State presented the following facts as the underlying basis for the plea:

[T]he proof would show on January 23, 2022[,] law enforcement received a report concerning a theft, specifically this was Lincoln County Sheriff's Department. This theft case was assigned to Investigator Tammy McDonald. While she was working on this theft, Investigator McDonald became aware of an infant being born to Kelsie Higby at 2 Simpson Road here in Lincoln County, Tennessee. This child was born some time on December 13th of 2021. Kelsie Higby is the daughter of [the Defendant], and [the Defendant] is the grandmother of this infant, [the victim]. As Investigator McDonald talked to witnesses and gathered more information it was discovered that [the victim] was born around the time of 12/13/2021 at 2 Simpson Road, and he also died at this address. Investigator McDonald obtained a search warrant for this residence. The search warrant was executed January 25th of 2022. As officers entered the residence they could smell decomposition. The trailer was overrun with trash and junk. Officers were afraid of disturbing the [victim's] body. Kelsie Higby, the mother, she was read her Miranda [rights and then asked] where [the victim] was located in the house. After lying about [the Defendant] taking [the victim] to the hospital, [Kelsie Higby] led officers to where the [victim] had been disposed of. [The victim] had been wrapped in a blanket, and his heavily decomposed body was found in a gray Dollar General storage tote surrounded by trash and junk in the back of the bedroom of the trailer.

When [the Defendant] was interviewed about what happened to this [victim], she advised Investigator McDonald that the [victim] was born there on the floor on a mattress. According to [the Defendant], [the victim] was born at home to prevent DCS from taking him away from them. Kelsie [Higby] has had 3 other children removed from her care due to drug use and abuse in the State of Alabama. [The Defendant] advised [that the victim] was fine and seemed healthy. There is a video the day after [the victim] was born of Kelsie Higby and Christopher Chapman, another co-defendant in this case, they were at Wal-Mart buying baby formula for him the day after he

2

was born.  At some point after [the victim's] birth, [the Defendant] and Kelsie [Higby] began to do shots of fentanyl.  [The Defendant] described to Investigator McDonald [how] as the shots of fentanyl were mixed and passed around the mattress, they would pass [the victim] between them.  [The Defendant] stressed to Investigator McDonald that this was okay because they used hand sanitizer between shooting up and handling the baby.  [The victim] died there in the living room some time after [the Defendant], Kelsie [Higby] and Christopher [Chapman] had used fentanyl and/or meth while passing [the victim] around.  [The Defendant], a former caregiver, attempted CPR on his little body, but no one knows how long he had already been dead.  The decision was made between [the Defendant], Kelsie Higby and Christopher Chapman to hide [the victim's] body, again wrapped in a blanket, put [it] in a storage tote and shove[] [it[ in to a back bedroom where he laid for 45 days before found by law enforcement.  The condition of his little body was horrible.  His body was sent for autopsy, his liver tissue was positive for methamphetamine and fentanyl.  Items of drug paraphernalia found there in the home were sent to the TBI Crime Lab and also confirmed to contain fentanyl.

Following the State's recitation, the trial court held a lengthy plea colloquy and questioned the Defendant extensively about whether she understood the charges and proceedings.  The trial court asked the Defendant if the statement of facts was correct, and she answered affirmatively.  The Defendant also confirmed with the trial court that she was entering the plea voluntarily.  The Defendant indicated that she understood the charges against her, that she had a right to proceed to trial and present witnesses, and that she was giving up those rights and others by entering her plea.  The Defendant stated that she had signed the plea form voluntarily after it had been explained to her by her attorney, who she agreed was prepared for trial.

On December 19, 2023, counsel filed a motion to withdraw the Defendant's plea.  A hearing was held at which counsel indicated to the court that, soon after entering her plea, the Defendant had "changed her mind."  At a hearing on the motion, the Defendant testified that she remembered entering her guilty plea, but she stated that it was based on "lies" and that she had been denied her medication.  About letters she had written from jail, the Defendant said that a paralegal friend who was also incarcerated had written them for her.  She stated that she did not understand much of what was occurring in the guilty plea hearing.  The Defendant agreed that trial counsel had met with her several times after her guilty plea was entered to discuss the circumstances surrounding her motion.

The Defendant stated that she wanted to withdraw her plea because she did not understand to what she was pleading.  She testified that the factual basis contained lies, and

that she was confused because she was not on her medicine. The Defendant stated she felt "forced" to plead guilty.

Upon being questioned by the trial court, the Defendant stated that she had been trained as a certified nursing assistant.

Investigator Tammy McDonald testified that she was employed by the Lincoln County Sheriff's Department and investigated the victim's death. The complaint was an abuse of a corpse allegation and the "possible death of a baby." While conducting her investigation, Investigator McDonald received a report of a possible stolen vehicle and learned that the Defendant and her daughter were the suspects. The vehicle was returned by the Defendant's daughter to the dealership, and Investigator McDonald went to the Defendant's residence to recover the license tag that had been stolen with the vehicle. Pursuant to that mission, Investigator McDonald asked permission to search the Defendant's residence. The Defendant did not consent to the request.

Further investigation led Investigator McDonald to listen to jail calls between the Defendant and her incarcerated husband, during which the Defendant told her husband the victim had died. In listening to the statements made in those calls and the subsequent jail calls involving the Defendant, Investigator McDonald believed the Defendant to be very coherent.

Investigator McDonald eventually informed the Defendant of her indictment and watched the Defendant's arraignment. She recalled that the Defendant behaved very differently in casual conversation versus during the arraignment hearing. Investigator McDonald recalled plea negotiations between the State and the Defendant with defense counsel present, stating that the Defendant spent hours with her attorney on that day. The Defendant expressed concern that she would give a statement implicating her co-defendants, as part of the plea agreement, and that the State would then rescind its offer to her. Investigator McDonald recalled an "intelligent discussion" between the Defendant and the State when the Defendant expressed concern that her plea offer would be rescinded after she had made her statement.

At the conclusion of the hearing, the trial court heard arguments and took the matter under advisement. Thereafter, the trial court denied the motion, issuing the following order:

> [I]n order for a defendant to withdraw their plea after having been sentenced or judgment entered they must demonstrate a manifest injustice in an applicable part of the process. Before entry of judgment a defendant need only demonstrate any fair and just reason. Rule 32(f) does not provide "a

4

criminal defendant who has [pleaded] guilty . . . a unilateral right to later withdraw his plea either before or after sentencing." *Id.*; *see State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005); *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). "The defendant bears the burden of establishing sufficient grounds for withdrawing [a] plea." [*State v. Phelps*, 329 S.W.3d 436, 444 (Tenn. 2015)]; *see State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Our supreme court has found manifest injustice when

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland* . . . and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (citations omitted).

However, a defendant's "change of heart" about pleading guilty, "dissatisfaction" with the punishment imposed, or the entry of a guilty plea to avoid a harsher sentence does not constitute a manifest injustice. *See Turner*, 919 S.W.2d at 355.

Of the four factors cited only the first and third factors arguably apply to Defendant's motion. While the proof at the motion probably encompassed other reasons outside the pleadings to set aside the plea, [the] Defendant's pleadings simply stated she has changed her mind about her plea and, secondarily, she felt there was no alternative but to enter a plea. As evidenced by case law cited above a "change of heart" is not a satisfactory reason to set aside a plea of guilty. The next averment Defendant felt she had no other choice but to plead guilty is a total fabrication of the truth.

. . . .

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see*

5

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *Turner*, 919 S.W.2d at 353. A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A defendant's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

During the nearly two hour plea, the Defendant constantly acted ignorant and insinuated her attorney did not explain laws and concepts to her. She testified inconsistently from one point to the next saying she understood and then did not understand despite repeated instructions and examples. She spent considerable time attempting to thwart the Court's efforts to explain the required information necessary for the plea. Investigator McDonald's testimony underscores [the] Defendant's efforts as she had multiple conversations with the Defendant which McDonald characterized as intelligent and coherent. McDonald also listened to numerous jail phone calls where [the] Defendant acted nothing like she did before the Court. McDonald never saw anything which would lead her to believe the Defendant had some cognitive impairment. Additionally, [the] Defendant had two largely unremarkable psychological examinations which would indicate she is capable of assisting counsel and could understand the proceedings. The Court finds McDonald's testimony to be credible. The Defendant, by contrast, is not even remotely credible.

Just like this motion, [the] Defendant's behavior before the Court was nothing more than an attempt to manipulate, frustrate and delay the proceedings. Therefore, considering the totality of the circumstances, the Court finds the Defendant entered her plea knowingly and voluntarily without ignorance, incomprehension, coercion, fear, fraud, threats or any inducements other than receiving a lesser sentence than she would have had she been convicted as charged.

It is from this judgment that the Defendant appeals.

## II. Analysis

6

On appeal, the Defendant argues that the trial court erred when it denied her motion to withdraw her plea because the required factors support withdrawal. The State responds that the trial court correctly denied the Defendant's motion because the applicable factors weigh against a finding that there was a manifest injustice that would permit the withdrawal of the plea. We agree with the State.

A defendant's right to withdraw a guilty plea is governed by Tennessee Rule of Criminal Procedure 32(f):

(1) Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.

(2) After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

A defendant who has entered a guilty plea does not have a right to unilaterally withdraw the plea. *State v. Phelps*, 329 S.W.3d 436, 444 (Tenn. 2015). A trial court's decision regarding a defendant's motion to withdraw a plea is reviewed for an abuse of discretion. *Id.* at 443 (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." *Crowe*, 168 S.W.3d at 740 (citing *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)). A trial court also abuses its discretion "when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, . . . applies reasoning that causes an injustice to the complaining party[, or] . . . fail[s] to consider the relevant factors provided by higher courts as guidance for determining an issue." *Phelps*, 329 S.W.3d at 443 (internal citations omitted).

The Tennessee Supreme Court has concluded that trial courts should use "the federal courts' non-exclusive multi-factor approach" in determining whether to permit a defendant to withdraw a plea. *Id.* at 447. Those factors include:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; (7) potential prejudice to the government if the motion to withdraw is granted.

7

*Id.* at 446 (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)). "[N]o single factor is dispositive," and "the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw." *Id*. (citing *Haygood*, 549 F.3d at 1052). The list of factors is not exclusive, and "a trial court need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal." *Id.* at 446-47 (citing *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006)). A defendant bears the burden of establishing grounds for withdrawing his or her plea. *Id.* at 444.

With respect to the stringent standard that applies to post-sentencing motions to withdraw, our supreme court has previously determined that "manifest injustice" is made out where, for instance,

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland,* 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe,* 168 S.W.3d at 742 (quoting *Henning,* 201 S.W.2d at 670) (footnotes omitted). The court has, moreover, recognized that a denial of due process constitutes manifest injustice as a matter of law. *Id.* at 742-43. As relevant here, "a defendant's change of heart about pleading guilty" will not support the withdrawal of a guilty plea on the basis of a manifest injustice. *Id.* at 743. *See also Ray v. State,* 451 S.W.2d 854, 856 (1970).

In this case, the trial court engaged in the relevant analysis, in that it applied and weighed the required factors, cited in *Crowe* and *Phelps*, against the evidence presented at the hearing on the motion to withdraw her plea. The trial court determined, based on the Defendant's statements and demeanor at the initial plea hearing, her testimony at the withdrawal hearing, and Investigator McDonald's testimony about the Defendant's actions and behavior, that the Defendant should not be allowed to withdraw her plea. The trial court determined that the Defendant was not a credible witness and was intentionally misleading the trial court about her understanding of the proceedings. The trial court recalled the lengthy plea hearing that lasted upwards of two hours and involved multiple discussions between the Defendant and her attorney about the circumstances surrounding the plea. The trial court recounted the Defendant's statements that she had made the choice to enter the plea of her own volition and that she understood the case against her and the ramifications of entering a plea versus proceeding to trial. The trial court found Investigator McDonald to be credible, who testified that her dealings with the Defendant

8

led her to believe the Defendant was completely coherent and had a full understanding of her plea. Our review reveals no abuse of discretion by the trial court.

We conclude that the trial court properly considered the appropriate factors for withdrawal and found that the Defendant did not provide sufficient proof that a withdrawal of her plea was necessary to correct a manifest injustice. We agree with the trial court that the balance of the factors did not weigh in favor of the Defendant. The trial court did not abuse its discretion by denying the Defendant's request to withdraw her guilty plea, and she is not entitled to relief.

### III. Conclusion

Based on the foregoing analysis and conclusions, we affirm the trial court's judgment denying Defendant's motion to withdraw her guilty plea.

_____ _s/ *ROBERT W. WEDEMEYER*__
ROBERT W. WEDEMEYER, JUDGE