IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2016

## JEANIE HOLSCLAW v. IVY HALL NURSING HOME, INC.

**Appeal from the Circuit Court for Carter County**
**No. C12784  Jean A. Stanley, Judge**

_____

**No. E2016-02178-COA-T10B-CV-FILED-DECEMBER 19, 2016**

_____

When asked to rule on the defendant's motion for physical examination by a certified rehabilitation counselor, the trial judge telephoned the director of a university department for information regarding the program in order to determine whether rehabilitation counselors "are even qualified to testify as experts." The trial judge disclosed the communication on the record and granted the examination. Later, the defendant filed a motion to recuse. The trial judge denied the motion and this accelerated interlocutory appeal followed. Because the trial judge learned information concerning facts in dispute from an extrajudicial source, we conclude that recusal is required by Canon 2.11 of the Tennessee Code of Judicial Conduct.

**Tenn. Sup. Ct. 10B Interlocutory Appeal as Right; Judgment of the Circuit Court Reversed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court. RICHARD H. DINKINS, J., filed a separate concurring opinion. CHARLES D. SUSANO, JR., J., filed a separate dissenting opinion.

Mark A. Fulks, Johnson City, Tennessee, for the appellant, Ivy Hall Nursing Home, Inc.

Anthony Alan Seaton, Johnson City, Tennessee, for the appellee, Jeanie Holsclaw.

## OPINION

### BACKGROUND

On November 20, 2012, Plaintiff/Appellee Jeanie Holsclaw ("Appellee") filed a retaliatory discharge complaint against Defendant/Appellant Ivy Hall Nursing Home, Inc. ("Appellant"). Eventually, the first two trial judges recused or otherwise removed themselves from the case, and the Honorable Jean Stanley was assigned to preside over

the matter. The parties engaged in extensive discovery over the years. Appellant filed a motion to dismiss the complaint and a motion for summary judgment. After the trial court denied the motion for summary judgment, Appellant requested an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure, which was denied by the trial court, and an extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure, which was denied by this Court. Trial was set five different times but never occurred. Most recently, trial was set for November 16, 2016.

On September 12, 2016, Appellant filed a motion under Rule 35.01 of the Tennessee Rules of Civil Procedure,[1] asking that Appellee be examined by a certified rehabilitation counselor ("CRC"), Edward M. Smith.[2] According to the motion, the examination was necessary to determine whether Appellee was capable of performing the job from which she was discharged. Appellant explained that Mr. Smith would "review [Appellee's] employment history, education, work injury, physical limitations, and daily activities in order to determine the impact that a particular disability has on the subject's employability in the open labor market and identify vocational skills that are transferrable." In addition, Appellant asserted that a CRC would be able to "testify about the availability of alternative job opportunities in a particular labor market[.]"

Appellee filed a response in opposition to the motion for a Rule 35 examination on September 19, 2016. Therein, Appellee argued that Appellant's request for an examination was the fourth such examination that Appellee would be required to submit to in conjunction with this litigation, that Appellant had already admitted that Appellee

---

[1] Rule 35.01 states:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

[2] The copy of this filing submitted by Appellee in conjunction with the recusal appeal does not contain a file stamp indicating the date it was filed. This is true of many of the filings attached as exhibits to Appellant's recusal appeal. Rule 10B of the Rules of the Tennessee Supreme Court specifically states that to effectuate an accelerated interlocutory appeal of the trial court's decision to deny a recusal motion, the petition shall include both "a copy of the motion" in which recusal was sought in the trial court and "a copy of any other parts of the trial court record necessary for determination of the appeal." Tenn. Sup. Ct. R. 10B, Canon 2.03. Clearly the inclusion of documents in the record that do not indicate that they were ever filed does not fulfill this requirement. In this case, however, Appellee does not dispute the filing of these documents and a docket log from the trial court indicates that the motion was filed on September 12, 2016. Accordingly, we will consider these documents. We encourage litigants to make a better effort in accelerated interlocutory appeals from the denial of recusal motions to ensure that all necessary documents are properly included in the record.

had a vocational disability, and that vocational disability was not an element of Appellee's wrongful termination case. Finally, Appellee asserted that a CRC could not testify as to the "availability of alternative job opportunities in the particular labor market[.]"

The trial court held a hearing on the Rule 35 motion on September 19, 2015. Therein, the trial judge made the following statements:

> THE COURT: My view on this is that I would rather have one expert I could trust that's appointed by the court, who doesn't care who the plaintiff is or who the defendant is. Really, my leaning would be for the court to appoint somebody. No, if you all don't want to do that, I'm probably going to let him go ahead and have this evaluation done.
>
> * * *
>
> THE COURT: Okay. And I will tell you all this: Most of the experts I've had on this kind of topic are, like, Dr. Hankins, vocational disability experts. So, I really was not all that familiar with the rehab counselors. To me, the whole concept of a rehab counselor is somebody who is going to counsel with you, form a relationship with you, and try to help you. So my first question was: Are these dudes even qualified to testify as experts?
>
> So, frankly, I called the director of the department at the University of Tennessee this morning. I talked to Dr. Mulkey.[3] I don't think there is any problem with me doing that, but I do think I have an obligation to disclose to you that I did. He just kind of filled me in on what the program, the certification is, what these guys do and don't do, you know, enough for me to at least conclude that this is the type of certification for a person that I might let testify as an expert.
>
> So I understand that what this person might or might not be able to testify to is also going to be limited by what their background, education, and so forth is. And I'm not even making any kind of ruling on that right now, but I had even asked him if he could give me a couple of names of people who might be willing to work for the court, not necessarily for a party in litigation and he said that, yes, he could probably do that.
>
> So, just for general information, if you're ever in a position where you would prefer to have a court-appointed expert that doesn't testify for a living, I think I can get us one. Just general info.

---

[3] In a later order, the trial judge notes that the doctor's full name is Dr. Wayne Mulkey. The trial judge also explains that Dr. Mulkey is "the director of the department which teaches rehabilitation counseling at the University of Tennessee."

Regardless, at the conclusion of the hearing, the trial court granted Appellant's motion for a Rule 35 examination. It appears that the Rule 35 examination was later completed without issue.

According to Appellant, it received a copy of the transcript from the September 19, 2016 hearing on October 21, 2016. Appellant subsequently filed a motion to recuse the trial judge on October 25, 2016. Therein, Appellant argued that the trial judge had "acquired information from an extra-judicial source that is not available to the parties" and "cannot be subject to scrutiny in the adversarial process." Because the trial judge would be required to rule on the admissibility of Mr. Smith's testimony, Appellant contended that this extra-judicial information amounted to an independent investigation of disputed facts, an act prohibited by Tennessee law.

At some point not clear from the record, Appellee responded in opposition to the motion to recuse.[4] Eventually, the trial judge entered an order denying the motion to recuse on or about October 28, 2016.[5] Therein the trial judge ruled that she had "done no investigation of defendant's expert witness whatsoever." Instead, the trial judge indicated that she had only inquired as to "what graduates might go on to do with their degree and/or certification" as well as inquired as to the availability of independent experts.

On November 1, 2016, Appellant filed a petition for an accelerated interlocutory appeal of the trial judge's denial of its recusal motion pursuant to Rule 10B of the Rules of the Tennessee Supreme Court. On the same day, Appellant also asked for a stay of the trial court proceedings pending resolution of this appeal. This Court granted Appellant's request for a stay on November 7, 2016. We also directed Appellee to file a response. On November 16, 2016, Appellee timely filed a response to Appellant's petition for a recusal appeal.

## ISSUES PRESENTED

---

[4] Although Appellant included the response in the attachment to its recusal appeal, the trial court docket log does not reflect that this document was ever filed.

[5] Again, the copy of this order does not contain a notation of the date of filing. Accordingly, it arguably does not comply with Rule 58 of the Tennessee Rules of Civil Procedure, which requires that all "judgment[s] or final disposition[s]" must be "marked on the face by the clerk as filed for entry." Typically, the failure to include this notation on a final judgment deprives this Court of jurisdiction under Rule 3 of the Tennessee Rules of Appellate Procedure to consider an appeal. *See Steppach v. Thomas*, No. W2008-02549-COA-R3-CV, 2009 WL 3832724, at *4 (Tenn. Ct. App. Nov. 17, 2009) (quoting *Citizens Bank of Blount Cnty. v. Myers*, No. 03A01-9111-CH-422, 1992 WL 60883, at *3 (Tenn. Ct. App. Mar. 30, 1992) ("[A]n order that does not comply with Rule 58 'is not a final judgment and is ineffective as the basis for any action for which a final judgment is a condition precedent.'"). Here, Appellant's appeal results not from the trial court's final judgment, but from the denial of a recusal motion, for which an accelerated interlocutory appeal as of right lies. Because there is no dispute that the trial court entered an order denying the recusal motion in this case, we will proceed with this appeal despite this deficiency in the documents presented to this Court.

The parties present two issues for our review: (1) whether the trial court's action in this case creates an appearance of impropriety necessitating recusal; and (2) whether Appellant's recusal motion and appeal is sanctionable.

## ANALYSIS

The Tennessee Code of Judicial Conduct is contained in Rule 10 of the Rules of the Tennessee Supreme Court ("Code of Judicial Conduct"). *See* Tenn. Sup. Ct. R. 10. Canon 2.11 of the Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. Sup. Ct. R. 10, Canon 2.11(A). Situations wherein a judge's impartiality may be questioned include when "[t]he judge has . . . personal knowledge of facts that are in dispute in the proceeding." *Id.* at Canon 2.11(A)(1). It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, Section 11 of the Tennessee Constitution, Tennessee Code Annotated section 17-2-101, and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that she can preside over a matter fairly and impartially, the judge nevertheless should recuse herself in cases where a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test designed to avoid actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* at 565 (citation omitted).

Pursuant to Rule 10B of the Rules of the Tennessee Supreme Court, a litigant is entitled to seek disqualification of a trial judge by filing a timely written motion that: (1) is supported by an affidavit under oath or a declaration under penalty of perjury by personal knowledge or by other appropriate materials; (2) states, with specificity, all factual and legal grounds supporting disqualification of the judge; and (3) affirmatively states that it is not being presented for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation. Tenn. Sup. Ct. R. 10B, § 1.01.[6]

Upon the filing of such motion, "the judge whose recusal is sought shall either grant or deny the motion in writing." *Watson v. City of Jackson*, 448 S.W.3d 919, 927 (Tenn. Ct. App. 2014). If the motion is denied, the judge shall state in writing the grounds for the denial. Tenn. Sup. Ct. R. 10B, § 1.03. Additionally, if the motion is denied, the movant may file an accelerated interlocutory appeal of the denial. According to section 2.02 of Rule 10B:

> To effect an accelerated interlocutory appeal as of right from the denial of the motion, a petition for recusal appeal shall be filed in the appropriate appellate court within fifteen days of the trial court's entry of the order. In civil cases, a bond for costs as required by Tenn. R. App. P. 6 shall be filed with the petition. A copy of the petition shall be promptly served on all other parties, and a copy also shall be promptly filed with the trial court clerk.

Tenn. Sup. Ct. R. 10B, § 2.02. As previously discussed, the movant is also required to include copies of "any order or opinion and any other parts of the record necessary for determination of the appeal." *Id.* § 2.03.

Here, Appellant argues that the trial judge's discussion with Dr. Mulkey of the University of Tennessee constitutes an independent investigation of disputed facts that necessitates dismissal. Appellee, on the other hand, argues that the trial judge's action in speaking with Dr. Mulkey was not improper and that no appearance of impropriety was created by the communication. There can be no dispute that trial judges are typically not permitted to make independent investigations of disputed facts.

As an initial matter, communications with a judge outside the presence of both parties are generally prohibited by the Code of Judicial Conduct. Canon 2.9(A) states that a judge shall not "initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." Tenn. Sup. Ct. R. 10, Canon 2.9(A) (describing

---

[6] Appellee suggests in his response to the recusal appeal that Appellant delayed its recusal motion for strategic reasons. First, we note that Appellee does not argue that Appellant's recusal was untimely under section 1.01 of Rule 10B. Tenn. Sup. Ct. R. 10B, § 1.01. Second, in making this assertion, Appellee cites to various parts of the record on appeal that are not contained in the record on appeal. While the initial burden is on the appellant to create an accurate record to support his or her appeal, the appellee also has a duty to ensure that the record contains documents necessary to our review. *See **Mitchell v. Jackson Clinic, P.A.***, 420 S.W.3d 1, 4 n.3 (Tenn. Ct. App. 2013). As such, we cannot consider any assertions regarding the record in this cause not supported by necessary documents. Finally, we cannot conclude that the delay in filing the motion to recuse in this case was inappropriate. Here, the trial court made her oral ruling on September 19, 2016. A transcript of this ruling, however, was not notarized until October 21, 2016. Appellant's recusal motion was filed shortly thereafter.

certain exceptions, such as scheduling or administrative issues). Canon 2.9 goes on to state: "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." *Id.* at Canon 2.9(C). As the comments to Canon 2.9 explain: "To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge." *Id.* at Canon 2.9, cmt. 1. As the comments to the Code of Judicial Conduct explain:

> [3] The proscription against communications concerning a proceeding includes communications with lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted by this Rule. . . .
>
> * * *
>
> [6] The prohibition against a judge investigating the facts in a matter extends to information available in all mediums, including electronic.

*Id.* at Canon 2.9, cmts. 3 & 6. As previously discussed, where a judge, by way of independent investigation or otherwise, gains personal knowledge of disputed facts, the judge's "impartiality might reasonably be questioned" and recusal may be necessary. *Id.* at Canon 2.11(A). As this Court explained:

> "The law is clear that the court must generally restrain itself to consideration of those facts that are before it and may not conduct an independent investigation." *Minor* [*ex rel. Hardin*] *v. State*, No. M2001-00545-CCA-R10-PC, 2001 Tenn. Crim. App. LEXIS 932, at *34–35, 2001 WL 1545498 (Tenn. Crim. App. Dec. 5, 2001) (citing Tenn. S. Ct. R. 10, Canon 3(B)(7)(e) cmt.); *see also State v. Ray*, 984 S.W.2d 239, 240 (Tenn. Crim. App. 1998). Further, "[b]ias or prejudice in the disqualifying sense must stem from an extrajudicial source and not from what the judge hears or sees during the trial." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998) (citing *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994)).

*Vannucci v. Memphis Obstetrics & Gynecological Ass'n, P.C.*, No. W2005-00725-COA-R3-CV, 2006 WL 1896379, at *7 (Tenn. Ct. App. July 11, 2006).

The defendant in *Minor ex rel. Hardin v. State*, No. M2001-00545-CCAR10-PC, 2001 WL 1545498 (Tenn. Crim. App. Dec. 5, 2001), raised a similar recusal motion. In *Minor*, the defendant alleged that the trial judge had an out-of-court conversation with a prospective expert witness for the defendant. *Id.* at *10. The defendant did not allege that the merits of the case were discussed but nevertheless argued that the communication created an appearance of impropriety. *Id.* The defendant filed a motion to recuse the trial judge, which the trial judge denied. The Court of Criminal Appeals affirmed, finding that there was no abuse of discretion in the trial judge's denial of the motion to recuse. *Id.*

Specifically, the Court of Criminal Appeals ruled that because the communication was with only a prospective expert witness regarding a matter unrelated to the pending matter, no appearance of impropriety was created. ***Id.*** (citing ***State v. Jones***, 735 S.W.2d 803, 810 (Tenn. Crim. App. 1987)) (finding no basis for recusal when trial judge held an ex parte conference with the prosecutor in the middle of trial regarding an unrelated matter where the defendant "failed to demonstrate any prejudice resulting from the conference"). *But see* ***Wilson v. Wilson***, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998) (holding that actual prejudice is not required to support recusal).

The situation presented in this case, however, is not analogous. First, the standard of review in ***Minor*** was far more limited than that at issue in this case. As noted above, the Court of Criminal Appeals in ***Minor*** was required to determine, under the previous version of the Code of Judicial Conduct, whether the trial judge's denial of the motion to recuse was an abuse of discretion. *See* ***Minor***, 2001 WL 1545498, at *10. Under the abuse of discretion standard, an appellate court cannot substitute its judgment for that of the trial court but instead must uphold the trial court's ruling even though "reasonable judicial minds could differ as to its soundness." ***Pullum v. Robinette***, 174 S.W.3d 124, 134 (Tenn. Ct. App. 2004) (citing ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)).

By order of January 4, 2012, however, the Tennessee Supreme Court amended the Code of Judicial Conduct and adopted "new" Rule 10B as an addition to the Tennessee Supreme Court Rules, effective as of July 1, 2012. *See In re: Petition for the Adoption of Amended Tennessee Code of Judicial Conduct Together with Changes in Rules and Statutes*, No. M2011-00420-SC-RL1-RL, at 2 (Tenn. 2012). Under the current version of Rule 10B,[7] this Court reviews a trial court's decision to deny a motion to recuse de novo, with no presumption of correctness afforded to the trial court's ruling. *See* Tenn. Sup. Ct. R. 10B, § 2.01 ("[T]he trial court's ruling on the motion for disqualification or recusal shall be reviewed by the appellate court under a de novo standard of review[.]"). Accordingly, in light of the express language of Rule 10B, we review the trial judge's ruling in this case under a far less deferential standard than that utilized by the Court of Criminal Appeals in ***Minor***.

Additionally, the Court of Criminal Appeals in ***Minor*** relied on the fact that the communication at issue did not involve the proceeding currently pending before the court and was with only a potential witness. Although the communication at issue in this case was not with a witness, it concerned both the pending matter and Appellant's chosen expert. Our review of the trial judge's statement is as follows: (1) the trial judge noted her unfamiliarity with CRCs testifying in this situation; (2) the trial judge telephoned whom we assume is the director of the CRC program at the University of Tennessee to discuss

---

[7] By order of November 22, 2016, the Tennessee Supreme Court has adopted proposed amendments to Rule 10B that become effective January 1, 2017. *See* 2016 Tenn. Ct. Order 0014, No. ADM2016-01256 (Tenn. 2016). The changes do not apply to this case nor do they alter the de novo standard applicable to recusal appeals.

"what the program, the certification is, what these guys do and don't do"; (3) the trial judge determined that "this is the type of certification for a person that [she] might let testify as an expert" using the information that she learned from the discussion. The trial judge noted, however, that the decision of whether a particular expert would be permitted to testify was not at issue at that time and the determination of which would depend not only on the CRC certification but also on the individual's personal qualifications.

Appellee argues, however, that the trial judge "gained no independent knowledge of a disputed evidentiary fact" through this communication. Instead, Appellee asserts that the communication involved only the trial judge's effort to obtain a court-appointed expert. Respectfully, we cannot agree. Here, the Rule 35 motion and Appellee's response placed the ability of Appellant's chosen expert to testify on certain matters squarely in dispute. While nothing in the trial judge's disclosure indicates that the trial judge discussed Mr. Smith specifically, it is clear that the trial judge endeavored to learn more information about Mr. Smith's degree and certification for purposes of determining whether he would be allowed to testify. Indeed, there can be no dispute that the trial judge was aware of the likelihood that Mr. Smith would be called to testify as Appellant's expert, given that the purpose of the trial judge's communication with Dr. Mulkey involved whether CRCs like Mr. Smith were "even qualified to testify as experts[.]" Accordingly, whether Mr. Smith would be permitted to testify as a CRC was a matter in dispute and, rather than relying solely on matters learned in the courtroom, the trial judge made an independent investigation into the CRC program to help her adjudicate that dispute. Clearly, such an independent investigation is not permissible under the Code of Judicial Conduct.

A somewhat similar situation was presented in *Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996). In *Edgar*, the trial judge was presiding over a class action lawsuit alleging that the Illinois's mental health care system was unconstitutional. *Id.* at 257. In the course of the case, the trial judge appointed a panel of experts to investigate the state's institutions and programs. *Id.* The panel was expressly permitted to meet with patients and state employees without counsel present. *Id.* Eventually, however, the panel began to meet with the trial judge to discuss the investigation without counsel for either party present. *Id.* One meeting between the panel and the trial judge involved a preview of the panel's conclusions and discussion regarding the soundness of the panel's methodology.[8] *Id.* Upon learning of the communications, the defendants filed a motion seeking the trial judge's recusal. The trial judge declined the motion and an appeal to the United States Court of Appeals for the Seventh Circuit followed.

The Seventh Circuit reversed the trial court's denial of the recusal motion. Under the federal judicial conduct rule at issue, the Seventh Circuit framed the question as whether "any meeting between judge and experts touch the merits, or procedures

---

[8] Specifically, the panel attempted to persuade the trial judge that its "methodology was sound." *Id.*

affecting the merits?" *Id.* at 258 (citing Canon 3A(4) of the Code of Conduct for United States Judges). Although the Seventh Circuit noted that the trial judge had refused to elaborate about the subject matter of the meeting, an outline from the meeting showed that the panel's findings were discussed. Accordingly, the Seventh Circuit determined that the outline "covers subjects at the core of the litigation." Based upon this outline, the Seventh Circuit held that the trial judge obtained extrajudicial knowledge, explaining:

> The point of distinguishing between "personal knowledge" and knowledge gained in a judicial capacity is that information from the latter source enters the record and may be controverted or tested by the tools of the adversary process. Knowledge received in other ways, which can be neither accurately stated nor fully tested, is "extrajudicial."

*Edgar*, 93 F.3d at 259. Because the trial judge gained extrajudicial knowledge of the facts in dispute through an independent investigation, regardless of whether the investigation was personal or through agents, the Seventh Circuit held that recusal was required. *Id.*

The situation presented in this case is certainly far less egregious than that presented in *Edgar*. Where in *Edgar*, the trial court stonewalled any effort to obtain additional information regarding its meetings with the investigative panel, there is no question that the trial judge in this case fully and fairly disclosed the communication at issue on the record. Still, the facts of this case also show that the trial judge consulted an extrajudicial source concerning the qualifications of CRCs, an issue that is part of the subject matter of the underlying action. While Dr. Mulkey may very well be the preeminent expert on rehabilitation counselors in Tennessee, the parties were not permitted to "test[]" his qualifications "by the tools of the adversary process" prior to the trial judge's consultation. *Edgar*, 93 F.3d at 259. Furthermore, while the trial judge here disclosed the existence of the communication and its general subject matter, the trial judge's statement on the record is largely lacking in the specifics of the communication. Specifically, while the trial court noted that the communication covered what "the program, the certification is, what these guys do and don't do," the trial court did not provide the parties with any of the information that she learned on these issues. Indeed, at the time the trial judge made the disclosure, the parties had not even been provided with Dr. Mulkey's full name or a complete description of which department he directs at the University of Tennessee. Thus, this case presents exactly the problem that is meant to be prevented by prohibiting judges from making independent investigations: because the trial judge's communication with Dr. Mulkey was extrajudicial, we cannot determine from the record exactly what information was given to the trial judge or whether Dr. Mulkey's information was "accurately stated nor fully tested." *Id.* As such, like the Seventh Circuit in *Edgar*, we likewise conclude that the trial judge obtained extrajudicial information in her communication with Dr. Mulkey.

- 10 -

We further conclude that based upon the particular facts of this case, the trial judge's independent investigation is sufficient to warrant recusal. The question of whether recusal is warranted must be determined on a case-by-case basis taking into account the particular facts of each case. *See **Smith v. State***, 357 S.W.3d 322, 344 (Tenn. 2011) (citing ***Lockhart v. Fretwell***, 506 U.S. 364, 369 n.2 (1993)) ("[I]nquiries regarding whether judicial recusal is required . . . are done on a 'case-by-case' basis, examining the facts and circumstances presented in each particular case."). Here, the trial court was faced with a motion regarding the examination and testimony of a type of expert that was unfamiliar to her. Prior to ruling on this motion, the trial judge telephoned another individual unknown to the parties in an effort to obtain information regarding the type of expert offered by Appellant. Shortly thereafter, the trial court ruled on Appellant's motion. Given the fact that the trial judge was prompted to make her telephone call to Dr. Mulkey by the pending Rule 35 motion, it is a reasonable inference that the information that she learned in the communication, which has never been fully disclosed to the parties, could have had some impact on her ruling.

Nothing in the record on appeal leads this Court to believe that the trial judge in this case holds a prejudice or bias against any party or that the trial judge cannot remain impartial despite this communication. In fact, as pointed out by Appellee, the trial judge ruled, despite Appellee's opposition, that Mr. Smith be allowed to examine Appellee, perhaps in part due to her conversation with Dr. Mulkey. This Court has held, however, that "because perception is also important, a party does not have to prove actual bias or prejudice" in order to seek a judge's recusal. ***Wilson v. Wilson***, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998). Indeed, Rule 2.11 notes that recusal may be required where a trial judge "has a bias or prejudice" **or** where the trial judge has "personal knowledge of facts" in dispute. Tenn. Sup Ct. R. 10, Canon 2.11 (A)(1). Furthermore, we have held repeatedly that adverse rulings, "even if erroneous, numerous and continuous," may not be sufficient to necessitate recusal. ***Alley v. State***, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). The converse also holds true—the fact that the trial court rules in the moving party's favor on related issues does not prevent an appearance of impropriety from requiring recusal. While the trial judge permitted Mr. Smith to examine Appellee under Rule 35, the question of whether and to what extent Mr. Smith will be permitted to testify was specifically reserved by the trial court in the oral pronouncement at issue.[9] Accordingly, we are unable to predict if or how the extrajudicial communication will affect future proceedings.

It is our belief that the trial judge's action in this case stemmed not from a bias or prejudice against one party, but simply from a desire to educate herself as to unfamiliar

---

[9] Appellee asserts in her response to the recusal appeal that she "did not and does not intend to challenge [Appellant's] expert's qualifications as to his examination of [Appellee]." As noted above, however, Appellee did challenge Mr. Smith's ability to testify as to certain disputed matters. Accordingly, we are not convinced that the issue of Mr. Smith's qualifications and ability to testify are matters beyond dispute in this case.

- 11 -

issues so that she could render an informed decision on the ability of CRCs to testify as experts. We certainly find no malice in the trial judge's well-meaning, but misguided action. Despite our belief in the trial court's subjective ability to preside over this case, we nevertheless conclude that the trial judge gained personal extrajudicial knowledge "of facts that are in dispute in the proceeding" through her communication with Dr. Mulkey. Tenn. Sup. Ct. R. 10, Canon 2.11(A)(1). As such, an appearance of impropriety was created under Canon 2.11 of the Code of Judicial Conduct necessitating recusal. The trial judge therefore erred in declining to recuse from this case. Because the trial court erred in denying the recusal motion and Appellant's recusal appeal has been successful, we decline Appellee's request to sanction Appellant for its action in initiating this recusal proceeding.

## Conclusion

The judgment of the Circuit Court of Carter County is reversed and this cause is remanded for transfer to another judge who will preside over this case. Costs of this appeal are taxed to Appellee, Jeanie Hosclaw, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE