FILED

03/24/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2026

## STATE OF TENNESSEE v. DARRELL KINDRED WAKEFIELD

**Appeal from the Circuit Court for Tipton County**
**No. 11584     A. Blake Neill, Judge**

———————————————————

### No. W2025-00803-CCA-R3-CD

———————————————————

Defendant, Darrell Kindred Wakefield, pled guilty to one count of sexual battery in exchange for a two-year sentence. He subsequently filed a motion to withdraw his guilty plea, pursuant to Tennessee Rule of Criminal Procedure 32(f)(2), asserting that his plea was not knowingly and voluntarily entered because he did not fully understand the consequences of being placed on the sex offender registry. The trial court denied the motion. On appeal, Defendant contends that the trial court erred in determining that he failed to establish a manifest injustice, warranting the withdrawal of the guilty plea. Upon review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

Joseph B. Simmons, III, (on appeal), Atoka, Tennessee; Bo Burk, District Public Defender; and John Scott (at guilty plea), Assistant District Public Defender, for the appellant, Darrell Kindred Wakefield.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Jason R. Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

*Guilty Plea Submission Hearing*

In November 2024, the Tipton County Grand Jury issued an indictment charging Defendant with sexual battery and aggravated assault in case number 11584. On February 24, 2025, Defendant pleaded guilty, as a Range I standard offender, to sexual battery.[1] The State announced the following factual basis for Defendant's plea:

> If this case had gone to trial, . . . the State would call officers from the Atoka Police Department and residents of Atoka who were witnesses, workers at the KFC, the victim in this case, KC[,] and others to testify that on or about June 24, 2024, . . . KC, [a] 16-year-old female[,] was working at KFC along with [Defendant], 20 years old. [Defendant] kept rubbing up against KC and was flirting with her[. She] told him to stop touching her, but he continued. KC went to the back of the store when [Defendant] grabbed her and rubbed his genitals up against KC's butt and was touching her hair.
>
> [A] witness[,] AW[,] saw this and confronted [Defendant] and told him to stop. When [Defendant] raised his shirt, he showed KC and AW a pistol and stated, ["]messing with the wrong one,["] placing them both in fear of their life. He then left the scene before police arrived and the firearm was not located[.]

During the State's announcement of the negotiated plea, the State noted that the mandatory punishment for sexual battery required Defendant to register as a sex offender and that because of the negotiated plea, Defendant would "have to register upon release within 48 hours here at the sheriff's office on the sex offender registry and [comply with] the standardized treatment for sex offenders."

Before accepting the plea agreement, the trial court found that there was a factual basis for the guilty plea, noting that Defendant had stipulated to the facts announced by the State. The trial court advised and questioned Defendant about his rights in accordance with Rule 11 of the Tennessee Rules of Criminal Procedure to ensure that Defendant understood the law and his rights prior to entering the plea. Specifically, the court reviewed with Defendant the nature of the charges against him and informed Defendant that a conviction

---

[1] As part of his plea agreement, the State entered a nolle prosequi on the aggravated assault charge.

for sexual battery "carries a mandatory registration on the sex offender registry." The court later asked Defendant, "You understand as a result of this conviction that you will have to register as a sex offender?" Defendant replied, "Yes, sir." Then, after questioning Defendant about his rights and his understanding of them, the court asked Defendant if he had any questions at this time for the court or for trial counsel, and Defendant replied, "No, sir." Finally, after Defendant pleaded guilty to sexual battery, the trial court reviewed the agreed sentence with Defendant and told him, "You'll have to register as a sex offender[.]" The court asked Defendant if this was "what [he had] agreed to[,]" to which Defendant replied, "Yes, sir."

The trial court accepted the guilty plea and sentenced Defendant, pursuant to the plea agreement, to two years with a one hundred percent release eligibility. The court suspended the sentence to supervised probation after the service of ninety days in jail.[2] The "Special Conditions" section of the judgment forms indicated that Defendant had to "comply with the Tennessee Sex Offender Registry requirements[,]" citing Tennessee Code Annotated §§ 40-39-201, -203.

*Motion to Withdraw Hearing*

On March 20, 2025, Defendant filed a motion to withdraw his guilty plea. In the motion, Defendant alleged that his guilty plea was not knowingly and voluntarily entered because he did not fully understand "the consequences of being placed on the Sex Offender Registry."

At a hearing on the motion, trial counsel testified that he had represented Defendant at the time of Defendant's guilty plea. Trial counsel stated that, after receiving the State's settlement offer, he met with Defendant two or three times to review it. Trial counsel said that he "would have gone over the length of the sentence, any charges that would have been dismissed in exchange for the plea, and the terms as far as if it was going to be a suspended sentence or if [Defendant] was going to serve a percentage of the time in jail."

Trial counsel testified that because Defendant pled guilty to sexual battery, he was required to register as a sex offender. When asked if he reviewed all requirements of the Sex Offender Registry with Defendant, trial counsel responded:

> I didn't read through all of the prescriptions that would have been in
> the statute or -- but I would have gone over with him what I thought the most

---

[2] The court also ordered Defendant's sentence to run consecutively to Defendant's sentence for a statutory rape conviction in Tipton County case number 11353.

important aspects would have been, which would have been, obviously, restrictions on where you can live, where you can work, proximity to minors.

He also told Defendant that he would be on the Sex Offender Registry for at least ten years but, potentially, for life.

Trial counsel said that Defendant's family informed him that Defendant had "some sort of issue there with respect to" a learning disability, but trial counsel did not know a specific diagnosis. In any event, trial counsel testified that he discussed the terms of the plea agreement with Defendant more than once, "asking if that's what he wanted to do" and "if he understood what he would be doing[.]" He said that Defendant repeatedly told him that he wanted to accept the State's settlement offer. Trial counsel stated that, based upon his conversations with Defendant, he believed that Defendant understood the nature of the charges against him, the alleged facts, and the potential consequences of the guilty plea and conviction. Trial counsel agreed that he reviewed the judgment sheets and the plea form with Defendant.

Cassandra Wakefield, Defendant's mother, testified that Defendant had a learning disability that caused "comprehension issues." Ms. Wakefield explained that he had been diagnosed with ADHD, oppositional defiance disorder, and social communication disorder; she said that Defendant had received "accommodations" in school but that he had graduated. She testified that Defendant was not receiving any form of disability benefits because of these diagnoses and that Defendant was employed at the time of the offenses.

Defendant testified that he only remembered meeting with trial counsel one time before he entered his guilty plea to sexual battery. Defendant said that trial counsel told him that he "couldn't be around certain people" as part of the Sex Offender Registry requirements but claimed that trial counsel never informed him that it would affect where he could live and work.

Defendant testified that he had been diagnosed with ADHD and a learning disorder when he was young and that, as a result, he had received "accommodations" during school. Defendant insisted that, if trial counsel had explained "line by line" the requirements of the Sex Offender Registry, he would not have pled guilty and would have gone to trial.

Jeff Lee, an attorney with the Public Defender's Office, testified that he represented Defendant in 2024 and 2025 on a prior case involving charges of statutory rape and aggravated criminal trespass. Mr. Lee said that, as part of a plea agreement in that case, Defendant was placed on judicial diversion. Mr. Lee explained that he talked to Defendant about the Sex Offender Registry and its restrictions "in terms of why he needed to take the

judicial diversion so seriously[.]" He stated that Defendant's judicial diversion had been revoked based upon the charges in this case.

Following the hearing, the trial court took the matter under advisement and then entered a written order denying relief. The court found that Defendant knowingly and voluntarily entered his guilty plea. The court noted that "not once during his plea colloquy did Defendant take the opportunity to ask the [c]ourt or [trial counsel] any questions about the consequences of being placed on the sex offender registry, a requirement that was also written on the plea agreement Defendant signed." The court accredited the testimony of trial counsel and found that, although trial counsel "admitted he did not go line by line through the sex offender statute, he did explain to Defendant the restrictions regarding places he could live and work and the limitations on proximity to minors." The court noted that the "primary evidence Defendant presented at the hearing was his own testimony" but that Defendant "could not even explain what specific consequences of registering as a sex offender were different than what [trial counsel] explained to him." The court found that Defendant failed to prove the existence of a manifest injustice, concluding instead that Defendant's testimony "amounted to no more than a change of heart about pleading guilty and his dissatisfaction with having to register as a sex offender."

This timely appeal follows.

## II. Analysis

On appeal, Defendant contends that the trial court erred in denying his motion to withdraw his guilty plea. He asserts that his guilty plea was unknowing and involuntary because he did not understand the requirements of the Sex Offender Registry at the time of his plea. He maintains that these circumstances "constitute [a] manifest injustice warranting [the] withdrawal of the guilty plea."

The State responds that the trial court properly denied Defendant's motion to withdraw his guilty plea because: (1) the requirements of the sex offender registry are collateral consequences of his plea and (2) the record contains substantial evidence to support the trial court's conclusion that Defendant's plea was knowing and voluntary. We agree with the State.

*Standard of Review*

A trial court's ruling on a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). An abuse of discretion occurs when a trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a

clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Id*. (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). A reviewing court will not find an abuse of discretion unless there is no substantial evidence to support the trial court's conclusion. *Crowe*, 168 S.W.3d at 740.

### Rule 32(f)(2)

Rule 32(f) of the Tennessee Rules of Criminal Procedure states that, after a trial court has imposed sentence but before a judgment becomes final, "the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." In this case, the trial court imposed Defendant's sentence on February 24, 2025, and he moved to withdraw his plea on March 20, 2025; thus, Defendant moved to withdraw his plea after sentence was imposed but before the judgment became final. *See e.g.*, *Abdur'Rahman v. State*, 648 S.W.3d 178, 196 (Tenn. Crim. App. 2020) ("As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed."). Therefore, Defendant could not withdraw his plea except to correct a manifest injustice. Tenn. R. Crim. P. 32(f)(2).

Although Rule 32(f)(2) does not define "manifest injustice," our supreme court has found manifest injustice when

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland* . . . and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (citations omitted). A defendant does not have a unilateral right to withdraw a guilty plea that was voluntarily entered. *State v. Davis*, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991). Tennessee courts have repeatedly held that a change of heart does not create manifest injustice to support the withdrawal of a guilty plea. *Phelps*, 329 S.W.3d at 444 (citing *Crowe*, 168 S.W.3d at 743); *Ray v. State*, 451 S.W.2d 854, 856 (Tenn. 1970); *see also State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995); *Davis*, 823 S.W.2d at 220.

### Knowing and Voluntary Plea

Defendant contends that he is entitled to withdraw his guilty plea because it was not entered knowingly and voluntarily because he did not fully understand the requirements of

the Sex Offender Registry. It is a fundamental requirement of constitutional due process that a guilty plea be knowingly and voluntarily entered. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000); *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [o]r subtle or blatant threats.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-243).

In order to determine whether a plea is intelligent and voluntary, a trial court must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. A trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904; *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once a trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a defendant, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by a trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a defendant must present more than "conclusory allegations unsupported by specifics[.]" *Id*. at 74. A reviewing court must examine the totality of the circumstances to determine if a guilty plea was knowing and voluntary. *Turner*, 919 S.W.2d at 353.

Here, the trial court properly found that Defendant's plea was knowing and voluntary. In *Ward v. State*, the Tennessee Supreme Court held that "neither our federal nor state constitution requires that an accused be apprised of every possible or contingent consequence of pleading guilty before entering a valid guilty plea" and that "[c]ourts are constitutionally required to notify defendants of only the direct consequences—not the

collateral consequences—of a guilty plea." 315 S.W.3d 461, 466-67 (Tenn. 2010). The Court explained that "the registration requirements imposed by the sex offender registration act are nonpunitive and that they are therefore a collateral consequence of a guilty plea." *Id.* at 472. Therefore, a "trial court's failure to advise a defendant of the sexual offender registration requirement does not render his guilty plea constitutionally invalid." *Privette v. State*, No. M2011-02640-CCA-R3-PC, 2012 WL 6172037, at *9 (Tenn. Crim. App. Dec. 11, 2012), *perm. app. denied* (Tenn. Apr. 11, 2013). Indeed, "[a]ny failure by the court or counsel to explain fully the sexual offender registry to the [defendant] does not render his guilty plea invalid." *Id.*; *see also Ford v. State*, No. E2018-00702-CCA-R3-PC, 2019 WL 1220790, at *4 (Tenn. Crim. App. Mar. 14, 2019) ("Trial counsel's failure to inform the Defendant that he 'would be subject to lifetime registration' did not render his guilty pleas invalid given that trial counsel was not required to 'explain fully the sexual offender registry' to the [defendant.]"), *no perm. app. filed.* Accordingly, Defendant's claim that he lacked a full understanding of the requirements of the Sex Offender Registry would not affect the validity of his guilty plea.

Moreover, the record contains substantial evidence supporting the trial court's conclusion that Defendant's plea was knowing and voluntary. The transcript of the guilty plea reflects that, during the plea colloquy, the trial court explained the charge to which Defendant was pleading guilty and the requirement that he would be placed on the Sex Offender Registry. When the court asked Defendant if he understood the charge and its consequences, Defendant responded, "Yes, sir." Defendant indicated that he understood that he was pleading guilty to sexual battery and that the aggravated assault charge would be dismissed. Defendant stated that no one was forcing him to plead guilty and that no one had promised him anything in exchange for his plea, outside of what was in the plea paperwork. The trial court also explained Defendant's sentence to him, including the requirement that he register as a sex offender. Defendant affirmed that he understood he would be required to register as a sex offender as a result of his conviction for sexual battery, and he said that he had no questions about the plea agreement. In accepting the plea, the trial court found that Defendant was competent and that the plea was knowing and voluntary. Defendant's statements during the plea colloquy, as well as the findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74.

Additionally, the trial court credited trial counsel's testimony that he explained to Defendant "the restrictions regarding places he could live and work and the limitations on proximity to minors" and rejected Defendant's testimony to the contrary. Moreover, as noted by the trial court, Defendant did not identify any aspect of the Sex Offender Registry—aside from the restrictions on where he could live and work—that would have caused him to take his case to trial if he had known about them. Under these circumstances, the trial court properly concluded that Defendant's testimony on the motion to withdraw

his guilty plea "amounted to no more than a change of heart about pleading guilty and his dissatisfaction with having to register as a sex offender."

Defendant did not establish the existence of a manifest injustice necessitating the withdrawal of his guilty plea, *see* Tenn. R. Crim. P. 32(f)(2), and the trial court did not abuse its discretion when it denied Defendant's motion. He is not entitled to relief.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.


s/*Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE